UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BRIAN ALBRIGHT, | ) |
| Claimant, | ) ) ) |
| vs. | ) ) Case No. 7:18-CV-0755-CLS ) |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

Claimant, Brian Albright, commenced this action on May 17, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Claimant contends that the ALJ's residual functional capacity finding was not supported by substantial evidence, and that the Appeals Council

inappropriately failed to consider new evidence. Upon review of the record, the court concludes those contentions lack merit, and the Commissioner's ruling is due to be affirmed.

A.  **Residual Functional Capacity Finding**

The ALJ found that claimant suffered from the severe impairments of obesity, status post right shoulder rotator cuff repair, status post lumbar laminectomy and fusion at L4-L5, post laminectomy syndrome, and anxiety disorder.[1] Despite those impairments, claimant retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is able to *occasionally use bilateral foot controls*. He can occasionally climb ramps and stairs but never climb ladders or scaffolds. He can *frequently balance* but can only *occasionally stoop* and never crouch, kneel or crawl. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes or operate commercial motor vehicles. The undersigned further finds that the claimant would be limited to routine and repetitive tasks and simple work-related decisions. He would be unable to perform at production rate pace but could do goal oriented work. He would be able to accept changes in the work place setting if introduced gradually and infrequently. He could have frequent interaction with supervisors and co-workers but only occasional interaction with the general public. In addition to normal workday breaks, he would off-task 5% of an 8-hour workday (non-consecutive minutes).

Tr. 86 (emphasis supplied).

Claimant asserts that the ALJ "failed to identify an evidentiary basis for his

---

[1] Tr. 83.

2

RFC finding."[2] To the extent claimant intended that argument to apply generally to the ALJ's decision, it is without merit. The ALJ considered and summarized claimant's medical records, and he also relied upon the assessments of the consultative examiners.[3] Therefore, it cannot be said that the ALJ's RFC finding was wholly without evidentiary support.

Claimant also makes the more specific argument that the RFC finding was inconsistent with the opinions of the consultative examiners. Dr. Thomas Jennings examined claimant on June 13, 2015. He observed that claimant had no problems getting up and out of a chair, but he did have problems getting on and off the examination table. Even though he ambulated with difficulty, he did not require an assistive device. His gait was abnormal and markedly antalgic, with mild limping on the left leg. Straight leg raising test was positive on the left but negative on the right. Claimant could walk on his toes and heels, squat and recover, and heel walk, but he had difficulty bending to touch his toes. Claimant had normal grip strength and normal manipulative skills in both hands. There was no muscle atrophy. Claimant's muscle strength was 4/5 in both legs. His reflexes were normal. The range of motion in his joints was normal, except in his lumbar spine, which was significantly limited. Dr. Jennings opined that claimant's back pain had a neurological component, and he

---

[2] Doc. no. 9 (Claimant's Brief), at 8.
[3] Tr. 86-90.

observed that claimant had to shift positions several times during the clinical interview. Dr. Jennings concluded that claimant would be able to sit, stand, and walk each for one-third to two-thirds of a workday. He could bend or stoop very little, or up to one-third of a workday.[4]

Dr. Lena Gamble performed a second consultative physical examination on February 27, 2017. The clinical examination revealed mild tenderness to palpitation at the C5-C6 vertebrae with pain radiating into the left arm, and tenderness to palpitation of the L2-Sacrum over the scar from claimant's prior surgery, with pain radiating to both legs. Claimant had limited range of motion in his spine and positive straight leg raise tests bilaterally. He did not require an assistive device, but he did limp on his left side. He was able to heel-toe walk with great effort and poor balance, and to squat and rise with no obvious increased effort. He could not duck walk, but he could arise from sitting without assistance or use of his arms. He had full grip strength and elbow range of motion, but his hip and knee range of motion were 3/5 on the left and 4/5 on the right, and his foot flexion was 3/5 on the right and 2/5 on the left. His knee reflexes were normal, but his ankle reflexes were abnormal. His bilateral ankles were swollen and tender to palpitation, but they exhibited full range of motion. Dr. Gamble assessed claimant with hypertensive disorder, lumbar post-laminectomy syndrome, history of lumbar fusion, lumbosacral radiculopathy, and

---

[4] Tr. 317-22.

spinal stenosis of the lumbar region. She indicated that claimant could never lift more than twenty pounds, but he could occasionally (up to one-third of a workday) lift up to twenty pounds. He could never lift more than ten pounds, but could occasionally lift up to ten pounds. Those limitations were the result of weakness in claimant's lower extremities. Claimant could sit for two hours at a time, and for a total of eight hours in a workday. He could stand and walk twenty minutes at a time (each), and for a total of two hours (each) in a workday. He did not require an assistive device to ambulate. Claimant could continually (over two-thirds of a workday) use both hands for reaching, handling, fingering, feeling, pushing, and pulling. He could never use either foot to operate foot controls due to bilateral clonus. Because of weakness in his bilateral lower extremities, he could never climb ladders or scaffolds, balance, stoop, or crouch, but he could occasionally climb stairs and ramps, kneel, and crawl. He could never be exposed to unprotected heights, occasionally operate a motor vehicle, frequently (one-third to two-thirds of a workday) be around moving mechanical parts, and continually be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and heat, and vibrations. Dr. Gamble noted that bilateral clonus affected claimant's ability to safely drive, and his inability to maintain balance would affect his ability to work at heights or with moving machinery. Claimant would be able to shop, travel without

assistance, ambulate without an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for his personal hygiene, and sort, handle, and use paper and files. All of the limitations assessed by Dr. Gamble would last for at least twelve consecutive months.[5]

Social Security regulations provide that, in considering what weight to give a medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). The ALJ afforded Dr. Gamble's assessment substantial weight because it was "internally consistent and consistent with the medical evidence of record."[6] He also afforded Dr. Jennings' assessment substantial weight because, even though it "was done several years ago,

---

[5] Tr. 629-39.
[6] Tr. 89.

it reflects *almost identical* limitations as those identified by Dr. Gamble."[7]

Claimant asserts that the ALJ's RFC finding was not supported by the record because

> Dr. Gamble's opinion and Dr. Jennings' opinion are not identical, and the ALJ's RFC finding is not the same as either of them. The ALJ found Mr. Albright could occasionally use bilateral foot controls. . . . Dr. Gamble said he could never operate foot controls. . . . Dr. Jennings did not address foot controls. The ALJ found Mr. Albright could frequently balance. . . . Dr. Gamble said he could never balance. . . . Dr. Jennings did not address balance. The ALJ found Mr. Albright could occasionally stoop. . . . Dr. Gamble said he could never stoop. . . . Dr. Jennings said he could occasionally stoop.

Doc. no. 9 (Claimant's Brief), at 9 (citations to the record omitted).

As an initial matter, the court notes that the ALJ never said that Dr. Gamble's opinion was identical to Dr. Jennings' opinion. Instead, he said they were "almost identical."

Setting that misstatement aside, claimant is correct that the ALJ failed to adequately articulate a specific reason for rejecting the consultative examiners' limitations on claimant's abilities to operate foot controls, balance, and stoop, and the record does not contain sufficient information to independently support that determination. *See Watkins v. Commissioner of Social Security*, 457 F. App'x 868, 871-72 (11th Cir. 2012) (holding that the ALJ erred by failing to include the consultative examiner's finding that the claimant required a sit-stand option in the

---
[7] *Id.* (emphasis supplied).

7

residual functional capacity finding); *Cloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (holding that the ALJ erred because he failed to explain why he discredited a physician's findings regarding the claimant's ability to engage in prolonged work).

Even so, the ALJ's failure to either consider claimant's limitations in operating foot controls, stooping, and balancing, or to articulate an appropriate basis for the failure to consider those limitations, constitutes only harmless error and does not warrant reversal. The vocational expert testified during the administrative hearing that an individual who could never use foot controls, balance, or stoop still would be able to perform jobs — including general office clerk, surveillance system monitor, and inspector — that existed in significant numbers in the national economy.[8] Therefore, even if the ALJ had considered claimant to be incapable of performing those three tasks, claimant still would not be disabled.

## B. New Evidence

Claimant also argues that the Appeals Council failed to consider new evidence.

> When a claimant submits new evidence to the AC [*i.e.,* the Appeals Council], the district court must consider the entire record, *including the evidence submitted to the AC*, to determine whether the denial of benefits was erroneous. *Ingram,* 496 F.3d at 1262. Remand is appropriate when a district court fails to consider the record as a whole, *including evidence submitted for the first time to the AC*, in determining whether the Commissioner's final decision is supported by substantial

---

[8] *See* Tr. 157-58.

evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alteration and emphasis supplied). Moreover, new evidence should be considered if there is a reasonable possibility that it would have changed the administrative result. *Washington v. Social Security Administration, Commissioner*, 806 F.3d 1317, 1321 (11th Cir. 2015).

Claimant submitted records from DCH Regional Medical Center, indicating that he was hospitalized from June 7-June 10, 2017, for an acute onset of swelling in his right calf. He was assessed with nonocclusive deep vein thrombosis, bilateral pulmonary thromboembolism, hypertension, chronic pain, peripheral neuropathy, and thrombocytopenia. Clinical examinations revealed that he was ambulatory and able to bear weight despite the swelling, and he had intact strength and sensation in his extremities. He was treated with anti-coagulants and released in stable condition to his own care, with activity as tolerated.[9] The Appeals Council did not consider that evidence because there was no "reasonable probability that it would change the outcome of the decision."[10]

Claimant was again hospitalized at DCH Regional Medical Center from September 24 to October 4, 2017, for pain, swelling, and warmth in both lower

---

[9] Tr. 96-107.
[10] Tr. 2.

9

extremities. He reported that he had prescriptions for blood pressure medication and anti-coagulants, but he had not been taking those medications for a few weeks because he could not afford them. His sensory and motor examinations were normal with no acute focal findings. He was assessed with bilateral deep vein thrombosis, multiple small pulmonary emboli, and a left thyroid nodule. He was treated with a different anti-coagulent medication that he would be more likely to be able to afford and continue after his release.[11] Claimant followed up as directed at the DCH Regional Medical Center Medical Oncology clinic on November 28, 2017. Clinical examination revealed minimal left lower extremity edema and equal strength in all four extremities. He was continued on anti-coagulants. He needed a biopsy of a nodule in his left thyroid, but he had no health insurance and could not afford the medication he would need to switch to in order to qualify for the surgery.[12] The Appeals Council considered the DCH records from September, October, and November 2017, but it concluded that the evidence did "not relate to the period at issue" and did "not affect the decision about whether [claimant] was disabled beginning on or before July 18, 2017," the date of the ALJ's administrative decision.[13]

---

[11] Tr. 26-66.
[12] Tr. 12-18.
[13] Tr. 2 (alteration supplied).

The Appeals Council did not err in its treatment of the new evidence submitted by claimant. Even though claimant did have a history of thrombosis in his left *arm* in November of 2015, it was superficial, and there is no evidence that he had any prior thrombosis in his *legs*, which is what he experienced in 2017. Accordingly, the new evidence did not relate back to the time period before the ALJ's decision. There also is no indication that the new evidence should have changed the administrative result. None of the physicians who examined claimant during any of his hospitalizations imposed any functional limitations at all, much less any that were more restrictive than the ALJ's residual functional capacity finding.

**C.     Conclusion**

The ALJ's decision was supported by substantial evidence and in accordance with applicable law, and the Appeals Council did not err in its treatment of new evidence submitted by claimant. Accordingly, the decision of the Commissioner to deny claimant's disability benefits is due to be affirmed. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 23rd day of January, 2019.

_____
United States District Judge